As the Court held in its original Order of Detention, this case is governed by the rebuttable presumption of detention set forth in 18 U.S.C. § 3142(e)(3) because there is probable cause to believe that the defendant committed an offense listed in 18 U.S.C. § 2332b(g)(5)(B) which carries a maximum term of 10 years or more of prison, in this case a violation of 18 U.S.C. § 2339B.  The defendant has offered a bond package which includes three co-signers, the appointment of a third-party custody, a condition of home detention and GPS electronic monitoring, a condition prohibiting internet access and standard travel restrictions.  The Court will find that, with this bond package, the defendant has rebutted the presumption that is created by the statute, which is a presumption based solely on the nature of the offense, with no additional information about the defendant or the offense conduct.

The Court further concludes however that the government has met its burden of establishing by a preponderance of evidence as to flight and by clear and convincing evidence as to dangerousness that no condition or combination of conditions will reasonably assure the defendant's future appearance in court and the safety of others in the community. As the government explained in its proffer, the defendant has consistently indicated a clear desire to kill others people on behalf of ISIS and has held himself out as someone who is computer savvy, who can build computer systems, who uses encrypted applications, who has used fake phone numbers and multiple SIM cards and who teaches others how to navigate computer applications to evade law enforcement detection. He himself led an online chat group which had as its purpose a pledge of allegiance and loyalty to ISIS, which translated to the killing of those who disagreed with the members' beliefs. The defendant has collected and distributed extremely disturbing and grotesque videos depicting the beheading of hostages, the drowning of hostages, the killing of hostages by sniper rifles, the killing of soldiers by the use of roadside bombs, and the dismembering of hostages. The defendant has warned others that these kinds of acts of violence result when an individual challenges or goes against ISIS. To the extent that there is a suggestion that the defendant's own words were not meaningful and not indicative of violent behavior, his actions corroborate the words, in that there were three instances of him engaging with total strangers simply because he felt that something about their appearance or attitude was an afront to his beliefs. And, far more significantly, the defendant made plans, in this case, to take a boat to Turkey to join ISIS in the fight in Syria. His statements to multiple individuals about his plans are set out clearly in the complaint affidavit, and he took specific actions to further his plan.

As to flight, the defendant was caught literally in the process of leaving the United States to fight and kill Americans abroad. In response to the suggestion that this case was simply a setup and that the defendant never had any real intention to commit any violent acts, several paragraphs in the complaint affidavit rebut that suggestion. In late November 2019, the defendant indicated that he believed that someone was watching him and that someone was monitoring his actions and movements. He suspected that he was being watched because a message application on his phone had been deleted without his involvement or knowledge and because he was receiving from several unknown calls from California. In response to these concerns, the defendant did not cease his actions, but instead only heightened his rhetoric.  He talked about sleeping with a knife under his pillow; he sent videos regarding the possession and use of high-powered rifles, as well as the creation of high-powered rockets and missiles, and he researched international flights.

Significantly, it was the defendant who researched the flights, convinced himself that it was too dangerous to fly and decided to take a boat to Turkey because he could not inflict sufficient violence and damage unless he joined the fight abroad.

In terms of the defendant's background and characteristics, he is 22 years old, dropped out of high school in the 9th or 10th grade and has not held steady employment since that time. His mother indicated that he has never held a job for more than two or three months, and the government proffered that he was fired from his last job. For the past several years, he has not worked or gone to school. There is also evidence that both of his parents knew of his actions in professing support for, and a commitment to, violence committed on Americans in Syria and abroad, but could do little to stop him. Indeed, his father tried when the defendant was living with him for a short period of time in Maryland and even had a police officer visit his home in Maryland, but instead the defendant left his father's home and returned to Connecticut, where he continued, unchecked by his mother, to engage in the conduct of described above. The defendant's aunt would not be an appropriate third-party custodian as she had very little involvement in the defendant's life before this offense conduct. There is no evidence to suggest that the defendant would abide by her strict rules since the defendant's mother, who lived with the defendant and had daily involvement in his life, tried to intervene and was not successful.

In this case, the defendant's past behavior, to some degree, is a predictor of his future conduct and does not give the court the assurance that he would abide by any conditions of release. It bears note that the offense conduct described in the complaint started in September 2018 and continued through the date of his arrest in December 2019. It was the defendant who talked about traveling to Syria to join the fight, it was the defendant who downloaded the messaging application onto the CHS's phone, it was the defendant who collected and distributed the disturbing and grotesque videos described above, it was the defendant who led the group chat regarding the commission of violent acts in support of his beliefs, it was the defendant who researched how to use high-powered firearms and how to build rockets and bombs and then boasted that he could build them, and it was the defendant who paid $500 in cash to travel on a boat from the United States to Turkey, where he would join ISIS and commit acts of murder in furtherance of his beliefs.

For these reasons, as well as those reasons articulated during the bond hearing on February 13, 2020, the Court concludes that there is no combination of conditions that would reasonably assure the defendant's future appearance in court and the safety of others in the community.


February 13, 2020                                    /s/ Robert M. Spector
Date                                                 Robert M. Spector
                                                     United States Magistrate Judge